IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

TERRY LEE FUTCH,

    Plaintiff,

v.

OFFICER PRECIOUS HILL; OFFICER BRADY; and OFFICER WRIGHT,

    Defendants.

CIVIL ACTION NO.: 6:16-cv-78

### ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Georgia State Prison in Reidsville, Georgia, submitted a Complaint in the above-captioned action pursuant to 42 U.S.C. § 1983. (Doc. 1.) I have conducted the requisite frivolity review of this Complaint. For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's Complaint and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal. Additionally, the Court should direct the Clerk of Court to enter the appropriate judgment of dismissal and close this case.

### BACKGROUND[1]

Plaintiff contends that Defendants violated his rights during an incident on June 16, 2016. (Doc. 1, p. 5.) On that date, Plaintiff claims that he had asked Lieutenant Hunt and Defendant Brady to see his mental health counselor, and his requests were denied by "security staff." Id. Then, at approximately 4:00 p.m., Defendants Hill and Wright escorted him out of his lockdown unit so that Plaintiff could receive insulin medication for his diabetes. Id. Officer Brady came into the area where Plaintiff received insulin because "she was the primary over the lockdown

---

[1] The Court takes the following facts from Plaintiff's Complaint and accepts them as true, as it must at this stage.

unit." Id. After receiving his insulin, Plaintiff was being returned to his cell at approximately 4:30 p.m. Id. Plaintiff sat down under the dorm camera to his cell to protest the fact that he had not been to see his mental health counselor. Id. Officer Wright then sat across Plaintiff's neck and back while Officers Hill and Brady "was snatching [sic] [Plaintiff's] legs taking off [his] shoes." (Id. at p. 6.) Plaintiff states that he told the officers he was not trying to be violent and that he just wanted to see his mental health counselor whom he had not seen in two weeks as well as the general population counselor. Id. Defendants Brady, Hill, and Wright told Plaintiff to shut his mouth and stop resisting. Id.

Following Defendants' use of force, Captain Johnson, Major Anderson, and the CERT Team escorted Plaintiff to the medical unit. Id. Plaintiff reiterated his request that he be allowed to see his mental health counselor, which these officers denied. Id. Once Plaintiff arrived at medical, Captain Johnson told the medical staff to clean Plaintiff's bloody right index finger and to get him back to the lockdown unit as soon as possible. Id.

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is

frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

### I. Claims against Defendants in their Official Capacities.

Plaintiff cannot sustain a Section 1983 claim against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state agency or a state officer in his official capacity is "no different from a suit against the [s]tate itself," such defendants are immune from suit under Section 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Department of Corrections. Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain

4

any constitutional claims against Defendants in their official capacities for monetary relief, and, therefore, the Court should **DISMISS** all claims against Defendants in their official capacities.

II.     **Dismissal of Plaintiff's Excessive Force Claims**

In order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995). While Plaintiff cites the Fourteenth Amendment in his Complaint, the Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates. Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999). An excessive force claim has two requisite parts: an objective and a subjective component. Sims v. Mashburn, 25 F.3d 980, 983 (11th Cir. 1994). In order to satisfy the objective component, the inmate must show that the prison official's conduct was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The subjective component requires a showing that the force used was "maliciously and sadistically for the very purpose of causing harm" rather than "a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320–21 (1986). In order to determine whether the force was used for the malicious and sadistic purpose of causing harm or whether the force was applied in good faith, courts consider the following factors: the need for the exercise of force, the relationship between the need for force and the force applied, the extent of injury that the inmate suffered, the extent of the threat to the safety of staff and other inmates, and any efforts taken to temper the severity of a forceful response. Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs, 456 F. App'x 845, 848 (11th Cir. 2012) (quoting Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009)).

5

Plaintiff's Complaint fails to assert a use of force by Defendants that was sufficiently serious to implicate the Eighth Amendment. He states that Defendant Wright sat across his back and neck while Officers Hill and Brady snatched his legs to take off his shoes. Plaintiff does not allege that Defendants punched him, kicked him, kneed him, slammed him down, twisted his limbs, or took another other forceful actions against him other than sitting across him, grabbing his legs, and taking off his shoes. Even in the Fourth Amendment context, the Eleventh Circuit has found similar uses of force insufficient to support an excessive force claim. Crosby v. Monroe Cty., 394 F.3d 1328, 1335 (11th Cir. 2004) (upholding dismissal of claim based on arresting officer's placing foot on the face of arrestee while arrestee was on the ground); Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (no excessive force claim where defendant grabbed plaintiff and shoved him a few feet against vehicle, pushed knee in back and head against van, and handcuffed him because "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment").

Additionally, Plaintiff does not establish that Defendants used force against him maliciously or sadistically for the purpose of causing harm. While Defendants attempted to escort Plaintiff back to the lockdown unit, he refused to do so and sat down on the floor in front of the camera near his cell. As other courts have recognized, an inmate who refuses to enter his cell, even when handcuffed, poses a threat to the disciplinary order of the prison, as well as the safety and security of other inmates. Brown v. Smith, 813 F.2d 1187, 1189–90 (11th Cir. 1987) (judgment in favor of an officer who used force against an inmate to accomplish the "legitimate security purpose" of getting the inmate into his cell.). Thus, by Plaintiff's own admission, his rebellion created the need for Defendants to use force against him in order to eliminate a threat to the safety of the staff and other inmates. The minimal amount of force that Defendants applied,

sitting across Plaintiff and grabbing his legs, was not disproportionate to the threat to security and safety that Plaintiff posed. Additionally, the only injury Plaintiff alleges in his Complaint is a bloody finger. Thus, the minor extent of his injury further supports a finding that the Defendants did not apply force maliciously or sadistically. See Johnson v. Moody, 206 F. App'x 880, 885 (11th Cir. 2006) (minor injury to finger was *de minimis* and thus did not meet the objective prong of excessive force claim). Finally, officers took efforts taken to temper the severity of Defendants' forceful response, as they took Plaintiff to the medical department after the incident.

For all of these reasons, the Court should **DISMISS** Plaintiff's claims of excessive force.

### III. Dismissal of Claims of Deliberate Indifference to Plaintiff's Medical Needs

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer, 511 U.S. at 832. Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347. However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison

official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference to medical care claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

Plaintiff alleges that he asked to see the mental health counselor throughout the day before the incident on June 16, 2016, but that "security staff" denied his request. However, Plaintiff does not state why he needed to see the mental health counselor. He does even allege

that he suffered from a mental health illness. Consequently, he entirely fails to allege that he had a medical need, much less a serious medical need, or that Defendants were aware of his medical need.² Additionally, he does not make any plausible claim that Defendants were personally involved in the denial of his medical care. The most he alleges is that he asked Defendant Brady, along with Lieutenant Hunt, to see the mental health counselor, but he does not identify Defendants Brady, Hill, or Wright as one of the "security staff" who denied his request to see the counselor. Thus, even if Plaintiff had alleged a serious medical need prior to the incident, he fails to allege that Defendants were aware of that need or that they disregarded that need.

Likewise, Plaintiff fails to allege facts that would plausibly establish that Defendants were deliberately indifferent to his medical needs following the incident. Plaintiff states that during the incident, he relayed to Defendants that he wanted to see his mental health counselor. However, again, he does not state what illness he suffered from, much less allege that Defendants were aware of that illness. Moreover, Plaintiff does not allege any injury resulting from the incident that would rise to the level of a serious medical need. The most he alleges is a bloody right index finger. However, Plaintiff was taken to the medical unit for treatment of that injury. Furthermore, Defendants were not involved in attending to Plaintiff's medical care following the incident. Rather, the CERT Team, Captain Johnson, and Major Anderson escorted him to the medical unit. (Doc. 1, p. 6.) Once at the medical unit, Captain Johnson, not Defendants, advised the nurse of Plaintiff's medical treatment. Id. Plaintiff does even allege that Defendants were present in the medical unit. Consequently, even if Plaintiff was deprived of medical care following the incident, Defendants were not involved in that deprivation.

---

² Defendants tended to the only serious medical need that Plaintiff alleges, diabetes, by taking him to receive his insulin medication.

IV.   **Leave to Appeal** *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[3] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal is not take in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** that the Court **DISMISS** this case and **DENY** Plaintiff leave to appeal *in forma pauperis*.

---

[3] A certificate of appealability is not required in this Section 1983 action.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 31st day of August, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA